HENRY SELING, PETER FOX, JAMES CLARK, JOSIAH CLARK, AND FREDERICK NAUBAUER, PLAINTIFFS IN ERROR, v. THE STATE OF NEBRASKA.

1.  **Criminal Law**: HOUSE BREAKING. In a prosecution for a violation of section fifty-one of the Criminal Code, where it is shown that the accused went to the house of another in the night time and called to the persons within, who were asleep, to open the door, falsely stating that he was the sheriff of the county and desired to serve a subpœna; but when the door was opened he ordered the inmates of the house to throw up their hands, but before he could enter the house the door was closed, and through which he shot twice, and then forced the door open and entered the house, this was held to be sufficient proof of a breaking and entering.

2.  —— : —— : EVIDENCE. The fact that such person after obtaining admission approached the head of the family in his bed, fired off his pistol, and presented the muzzle thereof to the person, ordering him in a threatening manner to hold up his hands, would be sufficient proof of personal violence to meet the requirements of said section fifty-one.

3.  **Trial**: QUESTIONS FOR JURY. Questions of fact are for the trial jury to determine, and when the testimony is conflicting a verdict of guilty in a prosecution for a misdemeanor will not be set aside if there is evidence sufficient to sustain it, notwithstanding it may be contradicted by the testimony on the part of the defense.

ERROR to the district court of Adams county. Tried below before MORRIS, J.

*Hayes & Taggart,* for plaintiffs in error.

*William Leese, Attorney General,* and *A. H. Bowen,* for the state.

REESE, J.

Plaintiffs in error were indicted for a violation of section fifty-one of the Criminal Code. Upon trial they were found guilty, and judgment of conviction was rendered on the verdict. Three questions are presented for decision by their brief. The first is, that the verdict was not sustained by sufficient evidence. The plaintiffs were tried jointly, but the contention in the brief is separately made, and it is insisted with considerable force that as to a part of them at least the verdict should be set aside. The bill of exceptions is quite voluminous, and we can see no good purpose to be subserved by a critical review of all the testimony. We have carefully read all the evidence, and find it as contradictory as it is possible for it to be. The witnesses for the state speak with absolute certainty as to the identity of plaintiffs in error, some of whom they knew by their faces, although they were partially masked, and some by their voices, while each defendant as positively testified that he was not present at the time of the commission of the offense, and knew nothing of it until his arrest after the finding of the indictment, and by the testimony of their families and co-defendants proved that they were elsewhere at the time the crime is alleged to have been committed. Two of the witnesses for the defense were, upon cross-examination, shown to have been criminals; one, a defendant, admitting that he had been twice convicted of felonies, and the other, the wife of a defendant, having cohabited with her husband in adultery for a number of years until the Monday last preceding the trial. Six witnesses testify that the reputation of the principal

witness on the part of the state for truth and veracity is bad, while five testify it is good. Under these circumstances the question of the weight of the testimony of each witness was peculiarly for the decision of the jury. Without discussing any of the testimony as applicable to each one of plaintiffs in error it is sufficient to say that if the jury believed the testimony of the witnesses for the prosecution there was sufficient to sustain the verdict.

The second contention upon the part of plaintiffs in error is, that the testimony of the witnesses for the state, if true, does not sustain the charge of *breaking* into the dwelling-house of the witness Hornback as charged in the indictment. The testimony on this branch of the case is, in substance, that soon after four o'clock on the morning of the 26th of February, 1884, while it was yet dark, plaintiffs in error went to the house of the witness and called. This call awoke Hornback, who was asleep with his family in the house, and he inquired who was there. The answer was, "The sheriff from Hastings, with a subpœna." He then instructed his son to open the door. The son lighted a lamp and opened the door. As soon as the door was opened he was ordered to throw up his hands, which he declined doing, but closed the door. Two shots were then fired, the balls passing through the door. The door was broken open, when the assailants entered, firing two additional shots, and ordering Mr. Hornback to throw up his hands, and Mrs. Hornback to get out of bed and dress herself. Three pistols were pointed at Mr. Hornback, yet in bed, accompanied with the order to throw up his hands. No further notice need here be taken of what occurred in the house. This is sufficient to show the breaking. Wharton's Crim. Law, § 765.

The third contention is as to the proof of personal violence. Upon this part of the case but little need be added to what we have already said. The firing of four pistol balls into a house, one of which, from the direction taken,

might quite reasonably be presumed to have been aimed at Mr. Hornback, would seem to be sufficient. The pointing of a loaded pistol at another in a menacing manner is an assault. Wharton's Crim. Law, § 606. Would the pointing of three loaded pistols in such a manner be any the less an assault? We presume not. As to the ultimate purpose or object of the visit we are left in doubt. A part of Mr. Hornback's property was carried out of the house, but when he called his assailants by name and told them he recognized them they withdrew, but not until after the commission of the crime charged was complete.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur..